UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELMER SHAWN OBERG,<br><br>　　　　　Plaintiff,<br><br>　　　v.<br><br>CAROLYN W. COLVIN,[1] Acting Commissioner of Social Security,<br><br>　　　　　Defendant. | Case No. EDCV 12-2205 JC<br><br>MEMORANDUM OPINION |

**I.　SUMMARY**

　　On December 21, 2012, plaintiff Elmer Shawn Oberg ("plaintiff") filed a Complaint seeking review of the Commissioner of Social Security's denial of plaintiff's application for benefits. The parties have consented to proceed before a United States Magistrate Judge.

　　This matter is before the Court on the parties' cross motions for summary judgment, respectively ("Plaintiff's Motion") and ("Defendant's Motion"). The Court has taken both motions under submission without oral argument. See Fed. R. Civ. P. 78; L.R. 7-15; January 4, 2013 Case Management Order ¶ 5.

---

　　[1] Carolyn W. Colvin is substituted as Acting Commissioner of Social Security pursuant to Fed. R. Civ. P. 25(d).

Based on the record as a whole and the applicable law, the decision of the Commissioner is AFFIRMED. The findings of the Administrative Law Judge ("ALJ") are supported by substantial evidence and are free from material error.[2]

## II. BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION

On February 15, 2011, plaintiff filed an application for Disability Insurance Benefits. (Administrative Record ("AR") 12, 146). Plaintiff asserted that he became disabled on or about April 2, 2009, due to multiple back injuries, osteoarthritis, bone degeneration in lower back resulting in sciatic nerve damage, neuropathy in feet, toes, left front thigh, right fingers and thumb, chronic pain, nerve damage, fibromyalgia, severe migraines, depression, arthritis in the joints, and a family history of schizophrenia and bi-polar disorder. (AR 163). The ALJ examined the medical record and heard testimony from plaintiff and a vocational expert on May 1, 2012. (AR 30-68).

On August 6, 2012, the ALJ determined that plaintiff was not disabled through the date of the decision. (AR 12-25). Specifically, the ALJ found: (1) plaintiff suffered from the following severe impairments: chronic pain complaints, obesity, sleep apnea, degenerative disc disease of the spine, chronic obstructive pulmonary disease, asthma, hypertension, and left foot plantar fasciitis (AR 14); (2) plaintiff's impairments, considered singly or in combination, did not meet or medically equal a listed impairment (AR 17); (3) plaintiff retained the residual functional capacity to perform light work[3] (20 C.F.R. § 404.1567(b)) with

---

[2]The harmless error rule applies to the review of administrative decisions regarding disability. See Molina v. Astrue, 674 F.3d 1104, 1115-22 (9th Cir. 2012) (discussing contours of application of harmless error standard in social security cases) (citing, *inter alia*, Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1054-56 (9th Cir. 2006)).

[3]"Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b). "[T]he full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-
(continued...)

1  additional limitations[4] (AR 17); (4) plaintiff could perform his past relevant work
2  as a CAD operator/design technician, senior project manager, and architectural
3  draftsman (AR 23); (5) alternatively, there are jobs that exist in significant
4  numbers in the national economy that plaintiff could perform, specifically sales
5  representative, mail clerk/mail machine operator, and lens matcher (AR 23-24);
6  and (6) plaintiff's allegations regarding his limitations were not credible to the
7  extent they were inconsistent with the ALJ's residual functional capacity
8  assessment (AR 19).

   The Appeals Council denied plaintiff's application for review.  (AR 1).

## III. APPLICABLE LEGAL STANDARDS

### A. Sequential Evaluation Process

To qualify for disability benefits, a claimant must show that the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." Molina v. Astrue, 674 F.3d 1104, 1110 (9th Cir. 2012) (quoting 42 U.S.C. § 423(d)(1)(A)) (internal quotation marks omitted).  The impairment must render the claimant incapable of performing the work claimant previously performed and incapable of performing any other substantial gainful employment that exists in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

---

[3](...continued)
hour workday.  Sitting may occur intermittently during the remaining time."  See Social Security Ruling ("SSR") 83-10.  Social Security rulings are binding on the Administration.  Terry v. Sullivan, 903 F.2d 1273, 1275 n.1 (9th Cir. 1990).

[4]The ALJ determined that plaintiff (i) could only frequently balance, kneel, crouch, crawl and climb ramps and stairs; (ii) could occasionally stoop and climb ladders, ropes and scaffolds; (iii) needed to avoid concentrated noise, vibrations, hazardous heights, and dangerous machinery; and (iv) needed to sit or stand every one hour at his work station for two to three minutes for stretch breaks.  (AR 17).

In assessing whether a claimant is disabled, an ALJ is to follow a five-step sequential evaluation process:

(1) Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.

(2) Is the claimant's alleged impairment sufficiently severe to limit the claimant's ability to work? If not, the claimant is not disabled. If so, proceed to step three.

(3) Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is disabled. If not, proceed to step four.

(4) Does the claimant possess the residual functional capacity to perform claimant's past relevant work? If so, the claimant is not disabled. If not, proceed to step five.

(5) Does the claimant's residual functional capacity, when considered with the claimant's age, education, and work experience, allow the claimant to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1052 (9th Cir. 2006) (citing 20 C.F.R. §§ 404.1520, 416.920); see also Molina, 674 F.3d at 1110 (same).

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five. Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001) (citing Tackett, 180 F.3d at 1098); see also Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (claimant carries initial burden of proving disability).

///

**B.     Standard of Review**

Pursuant to 42 U.S.C. section 405(g), a court may set aside a denial of benefits only if it is not supported by substantial evidence or if it is based on legal error. Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006) (citing Flaten v. Secretary of Health & Human Services, 44 F.3d 1453, 1457 (9th Cir. 1995)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citations and quotations omitted). It is more than a mere scintilla but less than a preponderance. Robbins, 466 F.3d at 882 (citing Young v. Sullivan, 911 F.2d 180, 183 (9th Cir. 1990)).

To determine whether substantial evidence supports a finding, a court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)). If the evidence can reasonably support either affirming or reversing the ALJ's conclusion, a court may not substitute its judgment for that of the ALJ. Robbins, 466 F.3d at 882 (citing Flaten, 44 F.3d at 1457).

**IV.    DISCUSSION**

   **A.     The ALJ Properly Evaluated the Medical Opinion Evidence**

       **1.     Pertinent Law**

In Social Security cases, courts employ a hierarchy of deference to medical opinions depending on the nature of the services provided. Courts distinguish among the opinions of three types of physicians: those who treat the claimant ("treating physicians") and two categories of "nontreating physicians," namely those who examine but do not treat the claimant ("examining physicians") and those who neither examine nor treat the claimant ("nonexamining physicians"). Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996) (footnote reference omitted). A treating physician's opinion is entitled to more weight than an examining

physician's opinion, and an examining physician's opinion is entitled to more weight than a nonexamining physician's opinion.[5] See id. In general, the opinion of a treating physician is entitled to greater weight than that of a non-treating physician because the treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." Morgan v. Commissioner of Social Security Administration, 169 F.3d 595, 600 (9th Cir. 1999) (citing Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987)).

The treating physician's opinion is not, however, necessarily conclusive as to either a physical condition or the ultimate issue of disability. Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (citing Rodriguez v. Bowen, 876 F.2d 759, 761-62 & n.7 (9th Cir. 1989)). Where a treating physician's opinion is not contradicted by another doctor, it may be rejected only for clear and convincing reasons. Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007) (citation and internal quotations omitted). The ALJ can reject the opinion of a treating physician in favor of another conflicting medical opinion, if the ALJ makes findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record. Id. (citation and internal quotations omitted); Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002) (ALJ can meet burden by setting out detailed and thorough summary of facts and conflicting clinical evidence, stating his interpretation thereof, and making findings) (citations and quotations omitted); Magallanes, 881 F.2d at 751, 755 (same; ALJ need not recite "magic words" to reject a treating physician opinion – court may draw specific and legitimate inferences from ALJ's opinion). "The ALJ must do more than offer his conclusions." Embrey v. Bowen, 849 F.2d 418, 421-22 (9th Cir. 1988). "He must

---

[5]Cf. Le v. Astrue, 529 F.3d 1200, 1201-02 (9th Cir. 2008) (not necessary or practical to draw bright line distinguishing treating physicians from non-treating physicians; relationship is better viewed as series of points on a continuum reflecting the duration of the treatment relationship and frequency and nature of the contact) (citation omitted).

set forth his own interpretations and explain why they, rather than the [physician's], are correct." Id. "Broad and vague" reasons for rejecting the treating physician's opinion do not suffice. McAllister v. Sullivan, 888 F.2d 599, 602 (9th Cir. 1989). These standards also apply to opinions of examining physicians. See Carmickle v. Commissioner, Social Security Administration, 533 F.3d 1155, 1164 (9th Cir. 2008) (quoting Lester, 81 F.3d at 830-31); Andrews v. Shalala, 53 F.3d 1035, 1042-44 (9th Cir. 1995).

### 2. Dr. Ernest A. Bagner

On May 13, 2011, Dr. Ernest A. Bagner, an examining psychiatrist, performed a Complete Psychiatric Evaluation of plaintiff which included a mental status examination and observation of plaintiff. (AR 254-57). Based on his examination, Dr. Bagner diagnosed plaintiff with depressive disorder, not otherwise specified and opined, in pertinent part, that plaintiff would have mild to moderate limitations in his ability to handle normal stresses at work and complete a normal workweek without interruption ("Dr. Bagner's Opinion"). (AR 256-57). While the ALJ gave "great weight" to Dr. Bagner's overall findings, she nonetheless determined that the record only supported "mild limitations" in plaintiff's ability to handle work stress. (AR 16).

Plaintiff contends that the ALJ improperly rejected Dr. Bagner's Opinion. (Plaintiff's Motion at 3-4). The Court finds that a remand or reversal on this basis is not warranted because the ALJ provided clear and convincing reasons for her evaluation of Dr. Bagner's Opinion.

Specifically, the ALJ properly discounted Dr. Bagner's Opinion because it was not supported by the physician's notes or the record as a whole. See Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005) ("The ALJ need not accept the opinion of any physician . . . if that opinion is brief, conclusory, and inadequately supported by clinical findings.") (citation and internal quotation marks omitted); see also Mendoza v. Astrue, 371 Fed. Appx. 829, 831-32 (9th Cir. 2010) ("The

ALJ permissibly rejected a medical opinion of a non-treating examining physician that was unsupported by the record as a whole.") (citing Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1195 (9th Cir. 2004)); Matney v. Sullivan, 981 F.2d 1016, 1019 (9th Cir. 1992) (ALJ may reject the conclusory opinion of an examining physician if the opinion is unsupported by clinical findings). For example, despite plaintiff's allegations of disabling psychological symptoms, Dr. Bagner found that plaintiff only had a "tearful" affect and "mild difficulty with short-term memory," and that plaintiff was "alert and oriented," had "tight" thought process, intact and coherent speech, average intelligence, and normal reality contact. (AR 255-57). In addition, as the ALJ noted, plaintiff's mental status examinations were consistently reported to be unremarkable, and there is no evidence which suggests that plaintiff was ever hospitalized for psychiatric treatment or that plaintiff received any psychotherapy for depression. (AR 15) (citing Exhibits 1F at 2, 3 [AR 244-45], 7F at 8 [AR 352], 11F at 1, 3 [AR 405, 407], 13F at 7, 9, 24 [AR 477, 479, 494], 17F at 3 [AR 579]). As the ALJ also noted, plaintiff's testimony suggested that he had been able to maintain employment for some period of time with the same mental impairments found by Dr. Bagner. (AR 16) (citing AR 36-38). Although plaintiff contends that his treatment records and testimony suggest more significant mental limitations (Plaintiff's Motion at 3-4), the Court will not second guess the ALJ's reasonable determination otherwise. See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) (citation omitted).

Accordingly, a remand or reversal on this basis is not warranted.

### 3. Dr. Robert H. Kounang

On February 23, 2012, Dr. Robert H. Kounang, an examining physician, performed a Functional Capacity Evaluation which included a physical examination of plaintiff, and completed a Residual Functional Capacity form. (AR 364-77, 545-58). Based on his examination of plaintiff, Dr. Kounang

diagnosed plaintiff with multilevel degenerative disk disease of the thoracic and lumbar spine and upper motor neuron neurologic condition, and essentially opined that plaintiff's pain and related limitations would preclude plaintiff from engaging in any substantial gainful activity ("Dr. Kounang's Opinions"). (AR 364-77, 545-58). Plaintiff contends that the ALJ improperly rejected Dr. Kounang's Opinions. (Plaintiff's Motion at 5-7). The Court finds that a remand or reversal on this basis is not warranted.

First, the ALJ properly rejected Dr. Kounang's Opinions as unsupported by clinical findings and the record as a whole. See Bayliss, 427 F.3d at 1217; see also Mendoza, 371 Fed. Appx. at 831-32; Matney, 981 F.2d at 1019. For example, Dr. Kounang's examination revealed some "tenderness" in plaintiff's cervical and thoracic spines but no tenderness in plaintiff's lumbar spine, and "no spinous process tenderness" or muscle spasm in any area of plaintiff's spine. (AR 366-67, 376). In addition, while Dr. Kounang found plaintiff had "no lumbar motion," decreased sensation at the left L5-S1, decreased flexibility, and an antalgic gait (favoring the left foot), he also found that plaintiff had "good strength, sensation and normal reflexes with his upper extremity." (AR 371). As the ALJ noted, magnetic resonance imaging ("MRI") of plaintiff's lumbar spine (which Dr. Kounang referenced) showed "moderate degenerative facet joint hypertrophy . . . causing neural foraminal compromise" but only "mild" lateral recess stenosis, "minimal" degenerative spurs, "no acute fracture or subluxation," and "no focal disk protrusion or spinal canal compromise." (AR 20) (citing Exhibit 7F at 14 [AR 358]). An MRI of plaintiff's thoracic spine was essentially normal. (AR 357). The ALJ also noted that, although electromyogram testing suggested "distal sensory motor neuropathy," the testing also reflected "[n]o convincing evidence of lumbosacral radiculopathy" in part due to "poor cooperation and poor tolerance of the needle study." (AR 20) (citing Exhibit 7F at 6 [AR 350]). While plaintiff suggests that the foregoing supports the significant functional limitations found by

Dr. Kounang, the Court will not second guess the ALJ's reasonable determination to the contrary, even if the medical evidence could give rise to inferences more favorable to plaintiff. Robbins, 466 F.3d at 882 (citation omitted).

Second, the ALJ properly discounted Dr. Kounang's Opinions to the extent they were based on plaintiff's subjective complaints (AR 22) (citing Exhibit 8F [AR 364-77]) which, as noted below, the ALJ properly discredited. See, e.g., Bayliss, 427 F.3d at 1217 (ALJ properly rejected opinion of treating physician which was based solely on subjective complaints of claimant and information submitted by claimant's family and friends).

Third, an ALJ may properly reject a medical opinion that is inconsistent with a plaintiff's demonstrated abilities. Magallanes, 881 F.2d at 751-52. Here, as the ALJ noted, and as discussed below, the record reflects that plaintiff "engaged in a somewhat normal level of daily activity and interaction." (AR 18) (citing Exhibits 5E [AR 179-80], 3F at 2 [AR 255]). As the ALJ's decision suggests, plaintiff's daily activities are inconsistent with the disabling impairments noted in Dr. Kounang's Opinions. (AR 35-37).

Fourth, the ALJ properly rejected Dr. Kounang's conclusory assertion that plaintiff was "permanently disabled" (AR 377) – a determination which is not binding on the Commissioner. See Boardman v. Astrue, 286 Fed. Appx. 397, 399 (9th Cir. 2008) ("[The] determination of a claimant's ultimate disability is reserved to the Commissioner . . . a physician's opinion on the matter is not entitled to special significance."); see Ukolov v. Barnhart, 420 F.3d 1002, 1004 (9th Cir. 2005) ("Although a treating physician's opinion is generally afforded the greatest weight in disability cases, it is not binding on an ALJ with respect to the existence of an impairment or the ultimate determination of disability.") (citation omitted); 20 C.F.R. § 404.1527(d)(1)) ("We are responsible for making the determination or decision about whether you meet the statutory definition of disability. . . . A
///

statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled.").

Finally, the ALJ properly rejected Dr. Kounang's Opinions, in part, in favor of the conflicting opinions of the state-agency examining physician, Dr. Seung Ha Lim (who, as the ALJ noted, essentially determined that plaintiff could do light work with occasional climbing and stooping). (AR 22) (citing Exhibit 2F at 5 [AR 250]). The opinions of Dr. Lim were supported by an independent physical examination of plaintiff, and thus, even without more, constituted substantial evidence upon which the ALJ could properly rely to reject Dr. Kounang's Opinions. See, e.g., Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001) (consultative examiner's opinion on its own constituted substantial evidence, because it rested on independent examination of claimant); Andrews, 53 F.3d at 1041.

### 4.     Dr. Ombres

To the extent the ALJ erred in relying on the opinions of the state agency reviewing physician, Dr. Pamela Ombres – who plaintiff contends was not adequately qualified to provide a medical opinion (Plaintiff's Motion at 4-5) – any error was harmless as the ALJ did not give "controlling weight" to Dr. Ombres' opinions and relied on the reviewing physician to assess "more [] restrictive . . . limitations" than those found by Dr. Lim. (AR 21-22) (emphasis added); cf. Sawyer v. Astrue, 303 Fed. Appx. 453, 455 (9th Cir. 2008) (error in ALJ's failure properly to consider medical opinion evidence considered harmless "where the mistake was nonprejudicial to the claimant or irrelevant to the ALJ's ultimate disability conclusion. . . .") (citing Stout, 454 F.3d at 1055).

Accordingly, a remand or reversal on this basis is not warranted.

///
///
///

**B.     The ALJ Properly Evaluated Plaintiff's Credibility**

**1.     Pertinent Law**

Questions of credibility and resolutions of conflicts in the testimony are functions solely of the Commissioner. Greger v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006). If the ALJ's interpretation of the claimant's testimony is reasonable and is supported by substantial evidence, it is not the court's role to "second-guess" it. Rollins, 261 F.3d at 857.

An ALJ is not required to believe every allegation of disabling pain or other non-exertional impairment. Orn, 495 F.3d at 635 (citing Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989)). If the record establishes the existence of a medically determinable impairment that could reasonably give rise to symptoms assertedly suffered by a claimant, an ALJ must make a finding as to the credibility of the claimant's statements about the symptoms and their functional effect. Robbins, 466 F.3d at 883 (citations omitted). Where the record includes objective medical evidence that the claimant suffers from an impairment that could reasonably produce the symptoms of which the claimant complains, an adverse credibility finding must be based on clear and convincing reasons. Carmickle, 533 F.3d at 1160 (citations omitted). The only time this standard does not apply is when there is affirmative evidence of malingering. Id. The ALJ's credibility findings "must be sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony." Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004).

To find the claimant not credible, an ALJ must rely either on reasons unrelated to the subjective testimony (*e.g.*, reputation for dishonesty), internal contradictions in the testimony, or conflicts between the claimant's testimony and the claimant's conduct (*e.g.*, daily activities, work record, unexplained or inadequately explained failure to seek treatment or to follow prescribed course of treatment). Orn, 495 F.3d at 636; Robbins, 466 F.3d at 883; Burch, 400 F.3d at

680-81; SSR 96-7p. Although an ALJ may not disregard such claimant's testimony solely because it is not substantiated affirmatively by objective medical evidence, the lack of medical evidence is a factor that the ALJ can consider in his credibility assessment. Burch, 400 F.3d at 681.

### 2. Analysis

Plaintiff contends that the ALJ inadequately evaluated the credibility of his subjective complaints. (Plaintiff's Motion at 8-11). The Court disagrees.

First, the ALJ properly discredited plaintiff's subjective complaints as inconsistent with plaintiff's daily activities and other conduct. See Thomas, 278 F.3d at 958-59 (inconsistency between the claimant's testimony and the claimant's conduct supported rejection of the claimant's credibility); Verduzco v. Apfel, 188 F.3d 1087, 1090 (9th Cir. 1999) (inconsistencies between claimant's testimony and actions cited as a clear and convincing reason for rejecting the claimant's testimony). For example, as the ALJ noted, contrary to plaintiff's allegations of disabling symptoms, during a psychiatric evaluation plaintiff reported that he was able to dress and bathe himself and manage his own money. (AR 18) (citing Exhibit 3F at 2 [AR 255]). In an exertional activities questionnaire plaintiff stated that he could lift and/or carry 15-20 pounds, drive both a manual and automatic car, drive for two hours without having to stop or stretch, and do household chores (*i.e.*, load the dishwasher, sweep the floors, vacuum and do laundry) for up to 15-20 minutes at a time. (AR 18) (citing Exhibit 5E [AR 179-80]). As the ALJ also noted, plaintiff testified at the hearing that he spent his day using the computer, following up on jobs, "keeping up with [] housework," and watching television. (AR 18) (citing AR 46-47). While plaintiff states that "none of his activities of daily living either individually or cumulatively equate to full time competitive employment" (Plaintiff's Motion at 9), the ALJ was not required to find that plaintiff's daily activities demonstrated an ability to engage in full-time work (*i.e.*, eight hours a day, five days a week) in order to discount the credibility of his

conflicting subjective symptom testimony.  See Molina, 674 F.3d at 1113 ("[An] ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting . . . [e]ven where those activities suggest some difficulty functioning. . . .") (citations omitted).  Here, the ALJ properly discounted plaintiff's subjective-symptom testimony to the extent plaintiff's daily activities were inconsistent with "[plaintiff's] allegations of disabling functional limitations."  Id.; see, e.g., Curry v. Sullivan, 925 F.2d 1127, 1130 (9th Cir. 1990) (finding that the claimant's ability to "take care of her personal needs, prepare easy meals, do light housework and shop for some groceries . . . may be seen as inconsistent with the presence of a condition which would preclude all work activity") (citing Fair, 885 F.2d at 604).

Second, an ALJ may properly consider a plaintiff's failure to "seek treatment or to follow a prescribed course of treatment" in assessing credibility.  See Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996).  Here, as the ALJ noted, treatment records suggest that plaintiff may have been slow to comply with taking prescribed medication.  (AR 19) (citing Exhibits 6F at 38 [AR 300], 14F at 8 [AR 504]).  While an ALJ may not reject symptom testimony where a claimant provides "evidence of a good reason for not taking medication," Smolen, 80 F.3d at 1284 (citations omitted), as the ALJ noted, plaintiff has failed to present such a sufficient reason.  (AR 19).

Third, the ALJ could properly discredit plaintiff's subjective complaints due to internal conflicts within plaintiff's own statements and testimony.  See Light v. Social Security Administration, 119 F.3d 789, 792 (9th Cir.), as amended (1997) (in weighing plaintiff's credibility, ALJ may consider "inconsistencies either in [plaintiff's] testimony or between his testimony and his conduct"); see also Fair, 885 F.2d at 604 n.5 (9th Cir.1989) (ALJ can reject pain testimony based on contradictions in plaintiff's testimony).  Although, as noted above, plaintiff stated in an exertional activities questionnaire that he could do certain household

chores (AR 179-80) and testified that he spent his day using the computer, following up on jobs, "keeping up with [] housework," and watching television (AR 46-47), as the ALJ noted, during a psychiatric evaluation plaintiff told Dr. Bagner that "[h]e does not do household chores or daily activities." (AR 255). The ALJ properly concluded that "plaintiff's inconsistency in reporting his activities of daily living diminishes his credibility and calls into question his credibility regarding his other allegations." (AR 18-19); see Tonapetyan, 242 F.3d at 1148 ("In assessing the claimant's credibility, the ALJ may use 'ordinary techniques of credibility evaluation,' such as considering the claimant's reputation for truthfulness and any inconsistent statements in her testimony.").

Finally, the ALJ properly discounted plaintiff's credibility in part because plaintiff's subjective symptom allegations were not fully corroborated by the objective medical evidence. See Rollins, 261 F.3d at 857 ("While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects.") (citation omitted). For example, as the ALJ noted, while plaintiff testified that his medication caused side effects of clumsiness, diarrhea, dizziness and sleepiness (AR 43), medical records do not contain evidence that plaintiff complained about such side effects to his doctors. The ALJ also noted that, while plaintiff was evaluated and treated for asthma and chronic obstructive pulmonary disease, treatment notes mostly reflected that plaintiff had clear lungs, no wheezes, rhonchi or rales, normal respiratory effort, and his breath was clear to auscultation. (AR 19) (citing Exhibits 1F at 2-3 [AR 244-45]; 6F at 22, 24, 30, 34, 35, 37 [AR 284, 286, 292, 296-97, 299]; 7F at 3, 8 [AR 347, 352]; 11F at 1, 3 [AR 405, 407]; 14F at 12, 15 [AR 508, 511]; 15F at 26 [AR 561]; 17F at 4 [AR 580]).

Accordingly, a remand or reversal on this basis is not warranted.

///

## V. CONCLUSION

For the foregoing reasons, the decision of the Commissioner of Social Security is affirmed.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: June 28, 2013

                                         /s/
                                     Honorable Jacqueline Chooljian
                                     UNITED STATES MAGISTRATE JUDGE